IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ A. MARTINÓ-VALDÉS<br><br>Plaintiff,<br><br>v.<br><br>RENAISSANCE HOTEL MANAGEMENT COMPANY, LLC. d/b/a THE WORTHINGTON RENAISSANCE FORT WORTH HOTEL; CORPORATION A; CORPORATION B; CORPORATION C; A INSURANCE COMPANY; B INSURANCE COMPANY; and C INSURANCE COMPANY.<br><br>Defendants. | CIVIL NO.:<br><br>RE: TORT CLAIM<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW**, plaintiff José A. Martinó-Valdés, (hereinafter referred to as "Dr. Martinó"), represented through his undersigned attorney and very respectfully requests, states and prays:

### I. JURISDICTION AND VENUE

1. Also, original jurisdiction over all the causes of action is vested in this Court by virtue of 28 U.S.C.S. § 1332(a).

2. Dr. Martinó is domiciled of the Commonwealth of Puerto Rico; the Renaissance Hotel Management Company, LLC, is a limited liability company doing business, in the state of Texas.

3. The herein stated claims exceed the $75,000.00 amount, *id.*, thus, the diversity jurisdiction amount is exceeded by the present claims.

1

## II. THE PARTIES

**PLAINTIFF:**

8. José A. Martinó-Valdés, is a resident and domiciliary of the Commonwealth of Puerto Rico, of legal age, married, a doctor in medicine with a subspecialty in anesthesiology, and who is physically handicapped because he does not have his two (2) legs; he must obtain locomotion by means of prosthesis and canes, etc.

**DEFENDANTS:**

9. Renaissance Hotel Management Company, LLC, (hereinafter the "Defendant"), is a company who, by information and belief, operates The Worthington Renaissance Fort Worth Hotel, which is located at located at 200 Main Street, Fort Worth, Texas 76102, and who's filling number at the registries of the "Texas Secretary of State" is 705848723.

10. "Corporation A" is a company incorporated under the laws of a place other than the Commonwealth of Puerto Rico, and which has an ownership interest and/or which is responsible for the administration of The Worthington Renaissance Fort Worth Hotel, located at 200 Main Street, Fort Worth, Texas 76102, and as such, is liable and responsible for the herein stated claims.

11. "Corporation B" is a company incorporated under the laws of a place other than the Commonwealth of Puerto Rico, and which has an ownership interest and/or which is responsible for the administration of The Worthington Renaissance Fort Worth Hotel, located at 200 Main Street, Fort Worth, Texas 76102, and as such, is liable and responsible for the herein stated claims.

12. "Corporation C" is a company incorporated under the laws of a place other than the Commonwealth of Puerto Rico, and which has an ownership interest and/or

which is responsible for the administration of The Worthington Renaissance Fort Worth Hotel, located at 200 Main Street, Fort Worth, Texas 76102, and as such, is liable and responsible for the herein stated claims.

13. "A Insurance Company" is an insurance company incorporated under the laws of a place other than the Commonwealth of Puerto Rico which has sued a policy to cover some or all of the risks and/or liabilities and/or occurrences incurred by the Defendant. and/or mentioned in this complaint.

14. "B Insurance Company" is an insurance company incorporated under the laws of the State of Virginia, USA or elsewhere, which has sued a policy to cover some or all of the risks and/or liabilities and/or occurrences incurred by the Defendant and/or mentioned in this complaint.

15. "C Insurance Company" is an insurance company incorporated under the laws of a place other than the Commonwealth of Puerto Rico which has sued a policy to cover some or all of the risks and/or liabilities and/or occurrences incurred by the Defendant and/or mentioned in this complaint.

### III. FACTUAL VERSION

16. On or around April 2, 2009, Dr. Martinó checked-in at the Defendant's hotel: The Worthington Renaissance Fort Worth Hotel, (hereinafter referred as the "Hotel"), at 200 Main Street, Fort Worth, Texas 76102.

17. The room Dr. Martinó needed was one proper and acclimated for a person with a physical disability, that is, a handicap-equipped-room. The Hotel assigned him a room which theoretically was a handicap-equipped-room.

18. The Hotel knew of Dr. Martinó's disability.

19. Dr. Martinó was attending to a "World Congress of Acupuncture," which was being celebrated in the facilities of the Hotel. He was scheduled to stay at the Hotel until, on or around April 6, 2009, and then return to Puerto Rico.

20. As scheduled, Dr. Martinó attended the "World Congress of Acupuncture," and prepared himself to leave, on or around April 6, 2009.

21. The incident occurred on this date, on or around April 6, 2009, his last day at the Hotel.[1]

22. Dr. Martinó woke up around 5:00 a.m. and 6:00 a.m. in order to fully prepare himself for his departure. Although his flight was scheduled to leave, on or around 1:00 pm., he is used to commence his preparation early, given the time required to do so as a result of his condition.

23. Dr. Martinó prepared the bathroom to take a shower, that is, put his clothes in it, and set his towel.

24. The bathroom in his room had a shower, and a wood seat was attached to the wall. The handlers of the seat were iron, and on the top ones, which were in form of two circles, three (3) screws where holding the seat to the wall.

25. The wall on which the wood seat was attached to, had tiles, and the screws were introduced into it.

26. Dr. Martinó entered the shower to take his bath, and sat on the wood seat. He removed both of his prosthesis, and put them near in order to reach them once he finished his bath. The only way he could put on his prosthesis was while seated on a chair – or at a place with similar altitude – but never on the floor because he is unable to properly organize them for use on the floor.

---

[1] Unless otherwise stated, all the following events occurred on this date.

4

27. Ending his bath, Dr. Martinó fell to the floor of the shower, because the wood seat's handles gave up and fell. The impact of the fall was direct on Dr. Martinó's left arm, which he instinctively moved to a position trying to prevent a greater impact, and on his back.

28. The screws that were on the top part of the handle of the seat, came out of the wall, that is, they became unscrew. The screws were rusty.

29. Because Dr. Martinó is unable to put his prosthesis on while on the floor, as explained before, he had to figure a way to reach a higher place in which he could sit and attach his prosthesis. The closest place he could sit, he figured, was the toilet.

30. Dr. Martinó could not call for help, as there was no telephone in the bathroom.

31. Dr. Martinó tried to "walk" with the stumps he has on his legs; he put two towels on the floor in front of him and tried to "walk" on them. He was not able to, and he suffered injuries to his legs while trying to do so.

32. Given that the only way he figured he might help himself was to sit on the toilet and put on his prosthesis, he made the effort to reach an iron bar on the wall of the bathroom, and helped himself to the toilet.

33. Once Dr. Martinó reached the toilet, he put his prosthesis and got dressed. Only then he was able to get out of the bathroom, and then called the Hotel's reception, where he informed management of the ordeal he had just suffered.

34. After around five (5) to ten (10) minutes, around four (4) Hotel employees arrived at Dr. Martinó's room. Among them, the manager of the Hotel and someone from maintenance.

35. No first aid assistance was brought to Dr. Martinó from the Hotel employees when they arrived; an offer to call "911" was made after their arrival to his room.

36. The employees brought a camera and took pictures of the shower and of the fallen wood seat. Dr. Martinó was told that the room was going to be closed after his departure.

37. Dr. Martinó got to the airport, and left Dallas on his way to Puerto Rico. While on the plane, he began feeling pain – electric shocks – on his left arm and back, and headaches; he is not accustomed to suffering these symptoms.

38. After ruling out a problem with his vision, he went, on or around April 8, 2009, and did some tests to figure out what was causing his symptoms.

39. Dr. Martinó was diagnosed with a "traumatic disc" as a result of a "recent trauma." He never told his physician, until after knowing the tests' results, that he had fell recently.

40. Also, given that he had kidney surgery, he took tests to check it up; the kidney was not affected. Although, an "incisional hernia" was caused immediately after his fall.

41. Dr. Martinó had no record of having trouble with his back, nor with any of the recent conditions he is suffering.

42. Dr. Martinó is suffering now, as a consequence of the fall at the Hotel, from continuous back, neck and arm pain, electric shocks on his left arm, sudden headaches, and pain on his sternum.

43. Dr. Martinó used to sleep well at night. After his fall, it has been impossible for him to sleep without feeling pain.

6

44. Furthermore, Dr. Martinó used to work weekly around six (6) days a week. Now, as a direct result of the conditions he is suffering consequence of the fall at the Hotel, he is being able only to work around three (3) days a week. Thus, he has been deprived of almost and/or around of half of his usual weekly income.

45. All the symptoms in Dr. Martinó's back, neck, arm, sternum and his headaches, are a direct result of his fall at the Hotel.

46. Dr. Martinó, as direct consequence of the aforementioned symptoms, is also suffering from sudden mood changes, as he is faced with excruciating unavoidable lapses of pain.

47. The Hotel's administration contacted Dr. Martinó because he allegedly had established a claim for the damages he suffered caused by the Hotel; they interviewed him but never reached him to determine and/or propose him a compensation for the damages they caused him.

## VI. CAUSE OF ACTION

48. The Hotel is responsible for Dr. Martinó's sufferings, detailed herein, because it intentionally and/or negligently did not give the proper maintenance to the wood seat in Dr. Martinó's room. 31 L.P.R.A. § 5141.

49. The Hotel is responsible for Dr. Martinó's conditions, detailed herein, because it knew, or should have known, that he – a person with a physical handicap – would use the wood seat in the shower of the Hotel room, and that it should not be sustained by rusty screws. *Id.*

50. The Hotel is responsible for Dr. Martinó's conditions, detailed herein, as it rented him a room with a wood seat in the shower that it knew, and/or should have known, was defective and/or improperly installed through tiles. *Id.*

51. The Hotel is responsible for Dr. Martinó's conditions, detailed herein, because all of them were consequences of the fall in the Hotel's room, which happened as a result of the Hotel's lack of maintenance of the wood seat in the shower. *Id.*

**WHEREFORE**, Dr. Martinó, respectfully requests of this Honorable Court for Judgment as follows:

A) Dr. Martinó's past and future loss of business income due to Defendants' intentional and/or negligent, improper maintenance of the wood seat in the room he rented in their Hotel, in an amount no less than $2,500,000.00;

B) Compensate Dr. Martinó for all his physical and emotional distresses, caused as direct result of his fall in the Defendant's Hotel, and which are estimated in no less than $500,000.00; and

C) Legal fees and costs.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 5th day of April 2010.

USDC NO. 117806
1319 ASHFORD AVE.
SON SID COND., SUITE 1
SANTURCE, P. R. 00907
TEL.: (787) 723-9393
FAX : (787)723-9251
rv@rvallonelawoffice.com

8